The next case, number 221535, Marco Danilo Santos Garcia v. Merrick B. Garland, at this time with counsel for the petitioner, introduce himself on the record to begin. Good morning, your honors. May it please the court, my name is Daniel Welch and I represent the petitioner, Marco Danilo Santos Garcia. I would like to reserve one minute for rebuttal should it become necessary. You may. Thank you. As your honors know, this is an asylum case. It's our position that it's a straightforward political asylum claim. There were no issues of credibility in this case, nor was there a claim that there was a lack of evidence. The immigration judge and the board denied for three reasons. They said that the harm did not amount to persecution, the harm was not motivated by a protected ground, and that Marco did not have a well-founded fear of future persecution on account of a protected ground. The harm that Marco endured or suffered constitutes persecution. He was encountered on three separate occasions in a three-week period. The first encounter, he armed men, demanded money, made death threats to Marco if he didn't come up with the money. The second encounter was 12 days later. Armed men put a gun to Marco's body, then took him to a nap, forced him into an alley, and then put a gun to his head and demanded money. When he said he didn't have it, they physically beat him. They kicked him in the stomach and they kicked him in the legs. Isn't this extortion rather than political persecution? And why or why not? Yes. Respectfully, Your Honor, I was going to get to nexus next. I was going to try to talk about the harm being persecution first. But the only way that you could determine that the political aspect of the case had nothing to do with it and that it was just extortion would be to completely ignore the testimony and the evidence and the record. The petitioner testified that he was politically active and that these people came to him on the first occasion and specifically said that they were from the lighter party, that they were mad that they lost money, and they wanted to recoup their money. And that they blamed FCN supporters, and specifically they blamed Marco for losing. So I don't know how you could reconcile that it was just extortion without, you know, addressing all of the evidence that there was political animosity involved. So are you saying that the government's connection to any of that, though, just has to do with the fact that they wouldn't take a report? You're talking about the police report? Yes. What was your question, Your Honor? I'm sorry. Are you saying that the government's connection to the so-called extortion involves the government's refusal to take a police report? Yes. So I'm claiming that it's political persecution, not just extortion. But, yes, the government is unwilling and unable to protect citizens in Guatemala. And the police officers essentially laughed at Marco and said, you're trying to make a police report on a political party because he didn't know the individual names. I thought the record showed that they said you have to have some evidence for us to pursue this. You haven't produced anything other than your story. Well, I mean, respectfully, Your Honor, in that case, then you'd essentially have to do the investigation for the police. A lot of people go to the police and not know who harmed them. And so he went to the police for help. You know, our standard under the substantial evidence rule is that we would have to conclude that no reasonable immigration judge and no reasonable BIA could find that there was no nexus to a protected ground. So you've got both nexus and protected ground. Now, tell me why we could grant your client relief. Yes, Your Honor. So the... Can you ask the question again? I'm sorry. What was the nexus to a protected ground? Your argument seemed to be that they failed to consider the evidence. But that really isn't your argument because they obviously did consider the evidence. So then the next question is why, on the face of all of that evidence, a reasonable fact finder could conclude only that he had shown a nexus and this was on a protected ground? Yes, Your Honor. So respectfully, I would argue that it's a mixed motive analysis and that you can't take all of the evidence and testimony in the record and no reasonable person could determine that he was merely being extorted. The political persecution was the main theme of why these people came to him in the first place. So it's our position that it's a mixed motive analysis, that he was targeted because of his political affiliations and that the extortion or the money was part of the motive but that they were targeted because of the political affiliation. Okay. Let me ask you, right now, I believe your client stated he's not aware of anybody looking for him in Guatemala at this time. Doesn't that do away with fear of future persecution? Respectfully, Your Honor, yes, it could. But the issue here is that he did not get the benefit of the doubt of the burden shifting. And the burden shifts to the government to prove that there's no well-founded fear of future persecution if the petitioner is able to show that there was past persecution on a protected ground. He never got the benefit of the doubt of that burden shift, not with the BIA nor with the immigration judge. And so you… And it isn't like the people who purportedly persecuted, they don't belong to the party who won the election. So there's a new government in place. There is, Your Honor. But that doesn't take away from the fact that he was persecuted in the past, that the lighter party dissolved one month before they even started to attack or persecute the petitioner. So who specifically is in power and whether the party is still active really has no bearing on the fact… But if there's a government in place and that government, the legitimately elected government, is not persecuting your client, if there's individuals from another political party or who belong to that other political party, how does that amount to the government persecuting him politically? It's not a legitimate government there who's persecuting him. Yes, Your Honor. Respectfully, we'd argue that the government in Guatemala cannot control this type of persecution. So it's our position that he's being persecuted because of his political affiliation. Regardless of who is in power, these people are still persecuting him. And for that you rely, or at least it's on the Human Rights Report in Guatemala, right? Correct. Yes, yes. And we rely on the fact that he went to the police, he tried to report him. Just because he didn't have all of the evidence in the entire case handed over to them, they laughed him out of the office. And so it's our position that, and through the Human Rights Reports, that Guatemala is completely incapable of protecting their citizens. And whether or not this lighter party is in power, my client still was persecuted because of his political affiliation. And yes, the government involvement is that they can't protect, they're unwilling and unable to protect the petitioner. But isn't this the sort of argument, you're talking about Guatemala right now, but isn't this the sort of argument that anyone would make for any central South American country, literally, correct? Respectfully, Your Honor, I don't understand the question exactly. No, in any country that there's a legitimately elected government, if the government doesn't, if there's a Human Rights Report that is here, then the result would be that the petitioner should be granted the relief, correct? Under these same facts, regardless of the country, if that situation- Regardless of the country, correct, yes. Regardless of the country, the Northern Triangle, Honduras, El Salvador, and Guatemala has had these issues and they don't have the ability currently to protect their citizens from crime or from persecution. And so that's our position on the government involvement or lack thereof. Okay, thank you, and you don't have a rebuttal. Let's hear from the Department of Justice. Good morning, Your Honors. May it please the Court, Joseph O'Connell on behalf of the respondent, the Attorney General. Your Honors, we have three different factual findings made by the agency in this case that are all supported by the record evidence. And the standard of review is highly differential. It requires the petitioner to show that the record compels a conclusion contrary to that of the agency. And as I believe we established in our answering brief, Mr. Santos has not done that. So again, three findings are past persecution, nexus, and whether Mr. Santos' fear is objectively reasonable. I'll address them in that order unless there's any questions. So as for past persecution, Mr. Santos was allegedly approached on three separate occasions by these lighter party supporters. And he was physically assaulted on one of those occasions. And, of course, while any sort of physical harm is obviously reprehensible, Mr. Santos suffered no bruising or injuries, and he did not require any medical treatment of any kind. Well, our case law also says that credible threats can be persecution. That's absolutely correct, Your Honor. The other aspect is the threats that he was a subject to. And while credible threats can constitute persecution in some circumstances— Well, these are threats coupled with an assault. That's right. But it's only true that credible threats can constitute persecution, even when they're coupled with this minor physical assault where the threats are so menacing that the threats themselves cause suffering or harm. And Mr. Santos bore the burden of providing the court with the specifics of any suffering or harm that he may have suffered as a result of those threats. But he didn't offer any testimony as to any suffering or harm that he experienced as a result of the threats. And going back to the physical assault— Well, he suffered enough to seek police assistance. I don't know if there's necessarily a connection between the amount of suffering and whether or not he sought police assistance. Even if he suffered no suffering whatsoever, he could still hypothetically go seek police assistance. And I think there's something noteworthy. It's at page 76 of the record. Mr. Santos himself described the assault as being over very quickly. And he said, quote, it wasn't anything serious, unquote. So, yes, there was a physical assault, but we do not believe that it was severe enough to constitute persecution. A good case that illustrates sort of the extreme nature of persecution is the Jinan Chen case. And there the applicant was beaten—the applicant was beaten by Chinese police. He was detained for nine days. He was beaten again during his detention. He was interrogated, and he was threatened with forced sterilization. And on review, this court held that that was not enough for the record to compel the conclusion that the applicant experienced past persecution. Is that case—I don't see it cited in your brief. Is it cited or no? I believe it was, yes. I can grab the brief. Okay, Jinan Chen versus Lynch. And obviously not our colleague here. Former Attorney General Loretta Lynch. So there's one more thing to note. It's a good last name. There's one more thing to note about the past persecution. And petitioner's counsel talked about how he was not provided the presumption. The applicant is only provided the presumption of a well-founded fear where he established his past persecution in the first instance. And so he was not entitled to a presumption of well-founded fear because he didn't establish it in the first instance. So he didn't establish past persecution. He's not entitled to the well-founded fear of future persecution presumption. So the next issue is the nexus. So, again, Mr. Santos had these three interactions with lighter party supporters. And on each occasion, he testified that these lighter party supporters asked him for money. So this is the evidence that the agency relied on. They relied on Mr. Santos' own testimony. Well, they asked him for money because they say they lost money in the election that they lost. So they were seeking to recoup the money that they lost. Right. So it wasn't just money. It wasn't just money, but when the court is talking about the one central reason standard, I think an important thing to consider is that the one central reason standard means that the protected ground cannot be incidental. It cannot be tangential. It cannot be superficial. And it cannot be subordinate to another ground. So, admittedly, given the circumstances of this case, there is a political component regarding the underlying factual predicate. But that doesn't mean that the lighter party supporters were motivated by politics as opposed to money. And this idea goes back to the Supreme Court's decision in Elias Zacharias. So in that case, the applicant was targeted for forced recruitment by guerrillas who were fighting a civil war with the Guatemalan government. And the Supreme Court said that while the guerrilla's overarching motive for the campaign was political, the forced recruitment of Elias Zacharias was not. So returning to this case, again, there is a political component to the factual predicate. But that doesn't mean that they were targeting Mr. Santos because of his politics. So they weren't saying, Mr. Santos, you know, the FCN supports universal health care and we're opposed to that. We don't like your politics. Well, he says he was high profile. Not just that he voted for that particular party during the election, that he was high profile. I don't know if there's evidence to support that. Well, he said he was handing out flyers at food stands. He was handing out flyers just as any other volunteer could do for any other presidential campaign. He said that he was operating a food truck at the time. And so he agreed to post some pamphlets at the truck. He read the pamphlets. And so at that point, he started volunteering. I don't think that, like his characterization, I don't think his testimony saying he's high profile necessarily establishes that fact. And again, the testimony says, his testimony says that every single time that they approached him, they said, we want money. So their motivation was extortion. And again, when you think about what the one central reason standard means, the non-protected ground cannot be incidental or subordinate to another ground. And so Mr. Sanchez's strongest argument is that the agency's nexus finding was not the only plausible interpretation of the evidence. But again, that's not enough under the standard of review. And I'm going to quote from Jimenez-Portillo, which is a case from 2022, where there are two plausible but conflicting inferences that can be made from the body of evidence. The agency's choice between those inferences is by definition supported by the evidence. In other words, as for the nexus finding, it may be possible that some adjudicators could have come to a different conclusion regarding the nexus. But the government's contention is that the record does not compel the conclusion that the one central reason motivating these lighter party supporters is that they were opposed to Mr. Santos' politics as opposed to just money or an extortion attempt. And so the last finding is the well-founded fear. And in that regard, the agency concluded that Mr. Santos did not have an objectively reasonable fear of future persecution, and it relied on a number of different factors. First, the agency noted that the lighter party dissolved and no longer exists in Guatemala, and it hasn't existed for the last seven years. They were canceled by the Guatemalan Supreme Court for campaign law violations. And, of course, I understand that the cancellation of the lighter party doesn't necessarily mean that these unidentified individuals just necessarily up and disappear. But the willingness of the Guatemalan government to cancel the party certainly says something about Mr. Santos' alleged fear of future persecution. And then it shows that the Guatemalan government necessarily has no problem enforcing the law against the lighter party. I think more fundamentally, as Your Honor noted, Mr. Santos, the candidate for president, won the Guatemalan election. This is Jimmy. Sorry, Your Honor. Anyway, Jimmy Morales won the presidential election in 2015-2016. Let me ask, regardless of that victory, what would you have to respond about that human rights report on Guatemala? Doesn't that weigh in favor of the petitioner's argument? I didn't see anything in the human rights report that necessarily would compel the conclusion that Mr. Santos would not be protected against an extortion attempt in Guatemala. I certainly don't think that a generalization in a human rights report is enough to compel the conclusion that he has an objectively reasonable well-founded fear of future persecution, especially when the court considers the fact that, again, his candidate won the presidential election. He served his full term from 2016 to 2020, and that was Jimmy Morales. He's not in office anymore, and there's someone who's entirely new in office from a different party, a party that's not related to— But the petitioner's not making a claim against that new person either. Right. Let me ask you another question. I can't find it on the record. Is the petitioner in the United States right now, or he's back in Guatemala? I believe he's here. He's here, okay. Yes. So, again, I think Mr. Santos—one final thing on the well-founded fear. Mr. Santos was asked if he'd heard whether those same unidentified individuals were still looking for him in Guatemala, and he said no. And that's not surprising in light of the fact that this whole thing involves an extortion attempt for 40,000 quetzales, which is about $5,000, and this is from early 2016. And I think it's just—if I could just finish this sentence. Yes, please go ahead. Okay. And it's just unreasonable to assume that these unidentified individuals are still in Guatemala waiting for Mr. Santos to come back in order to harm him or extort him further. Okay. Thank you. Go ahead. Let's hear the rebuttal. Please reintroduce yourself on the record to begin. You have a one-minute rebuttal. And before your minute starts running, your client's still in the United States, correct? That's correct, Your Honor. Okay. So your minute starts now. Thank you. May it please the Court, this is Daniel Welch on behalf of the petitioner. I just wanted to point out a few things with regards to the harm. All of the cases cited by the Attorney General, none of them have all of the factors of harm that are in this case. There's four important factors of harm in this case. There were death threats. There was use of a gun during the commission of the death threats. There was a physical beating, and the frequency was three times in three to four weeks. And so it was systematic. I would also point out that the Attorney General argues that petitioner didn't speak to the impact of the harm, and that's incorrect. Marco stated in his affidavit that he was scared of these men because they were armed. He also testified at the hearing in the record at page 77, lines 20 through 21. He stated that he went to the police, he told them he was very afraid and that he needed help. Can I finish one more? Please finish. And then he testified that during the third incident, one of the men pulled their weapon and pointed it at him, and he became scared and decided to run to save his life. So this claim that he doesn't speak to the impact the harm had on him is incorrect. And you can also look at his actions. His actions speak to the impact, reporting to the police, running from these people, locked himself in his house, and then fled the country and left all of his belongings behind. It shows he's a desperate man. So if there's no other questions, that's all I have, Your Honors. Thank you very much. Thank you very much.